UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JERODE GARNER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 20-1179** |
| **PONTCHARTRAIN PARTNERS, LLC, ET AL** | **SECTION: "S" (1)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment on "Borrowed Employee" Defense** (Rec. Doc. 45) filed by defendant Z.E. Services, L.L.C. is **GRANTED**.

## BACKGROUND

This case stems from a maritime personal injury that occurred while the plaintiff was working aboard a vessel captained by Captain Kevin Morgan at a Ponchartrain Partners, L.L.C. ("Ponchartrain Partners") jobsite, as part of a project to build breakwater jetties to protect Grand Isle. Captain Morgan was a W-2 employee of Z.E. Services, L.L.C. ("Zealous"), working as a captain on the Ponchartrain Partners vessel pursuant to a service agreement between Ponchartrain Partners and Zealous. The details of the personal injury are not relevant to this motion. Zealous has asserted a borrowed employee defense, arguing that Captain Morgan was the borrowed employee of Ponchartrain Partners at the time of the accident, thus exonerating Zealous and making Ponchartrain Partners vicariously liable for any negligence on Captain Morgan's part.

Captain Morgan captained the M/V MARY JANE, whose principal function was to transport rocks from one end of the jobsite to another via barges hooked to the M/V MARY

JANE. An excavator crane operated by another contractor, Low Land Construction Co., Inc. ("Low Land"), would pick up rocks from a large rock barge and transfer them into a barge attached to the M/V MARY JANE. Once the rocks were transferred, Captain Morgan would then navigate the M/V MARY JANE across a waterway so the rocks could be unloaded at the site of the actual project.

Captain Morgan testified that he was employed as a captain by Zealous. His W-2, salary, and benefits were all provided by Zealous. Pursuant to an agreement that Captain Morgan characterized as a "rent-a-captain" arrangement, Zealous supervisor, Art Leblanc, assigned Captain Morgan to the Ponchartrain Partners jobsite and told him to take instructions from Ponchartrain Partners and "work as directed" while there.[1]

Captain Morgan testified that the job was overseen by Ponchartrain Partners employee Nick Dufrene. Each morning, Dufrene would lead a safety meeting and lay out the plan for the day. Once underway, the details of where and when to bring the boat in order to move the rock were directed and coordinated by Low Land's excavator operator, Josh. Captain Morgan never took any orders from Zealous while on the jobsite. Ponchartrain Partners owned the boat, and Ponchartrain Partners supervisor Dufrene controlled Captain Morgan's presence on the jobsite, and had the power to discharge Captain Morgan from the vessel. Leblanc retained the capacity to terminate his employment at Zealous or to assign him to other jobsites.

Each day, Captain Morgan brought on board his own hard hat, work vest, steel-toed

---

[1] Depo. of Captain Kevin Marshall Morgan, 11:2-5; 91:5-12.

shoes, and lunch. The only supply Captain Morgan needed while on the vessel was oil, which was supplied by Ponchartrain Partners. Captain Morgan testified that if he ever needed anything else, Ponchartrain Partners would have been the party to contact. While working at the site, he lived at a shoreside condo provided by Ponchartrain Partners. Captain Morgan testified unequivocally that he "reported to Nick [Dufrene] or someone with Ponchartrain Partners while at the jobsite."[2]

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 477 U.S. 242 (1986).

If the moving party meets the initial burden of establishing that there is no genuine issue,

---

[2] Id. at 144:8-11.

the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents properly to support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## DISCUSSION

In Ruiz v. Shell Oil Co., 413 F.2d 310, 312–13 (5th Cir. 1969), the United States Court of Appeals for the Fifth Circuit outlined nine factors to be used to determine whether the borrowed employee doctrine applies. These factors are: (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details of cooperation? (2) Whose work is being performed? (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer? (4) Did the employee acquiesce in the new work situation? (5) Did the original employer terminate his relationship with the employee? (6) Who furnished the tools and the place of performance? (7) Was the new employment over a considerable length of time? (8) Who had the right to discharge the employee? (9) Who had the obligation to pay the employee?

In the Fifth Circuit, these factors are applied whether the borrowed employee question arises in the context of a vicarious liability claim (in which the borrowed employee doctrine

inculpates the borrowing employer), or a worker's compensation or Longshore Harbor Workers Compensation Act ("LHWCA") claim (in which the borrowed employee doctrine immunizes the borrowing employer from tort liability). Santacruz v. Hertz Equip., 2015 WL 2340330, at *2 (S.D. Tex. Apr. 27, 2015). However, different factors among the nine are emphasized depending upon in which of these two contexts the issue arises. Id.

In cases such as this one, involving vicarious liability, the "control" factor is given the greatest weight. Id. (citing Guidry v. S. La. Contractors, Inc., 614 F.2d 447, 455 (5th Cir. 1980).[3] This is consonant with the fact that "vicarious liability is an issue of agency – a company is liable to others for the conduct of its agents – and agency turns largely on control." Id. (citing RESTATEMENT (THIRD) OF AGENCY § 7.07 (2006)). "[O]nly if the employee acted under the orders of his employer should injuries to third parties be traced to the original negligence of the employer." Gaudet v. Exxon Corp., 562 F.2d 351, 356 (5th Cir. 1977). The court weighs the Ruiz factors in the vicarious liability context.

### 1. Who had control over the employee and the work he performed, beyond mere suggestion of details of cooperation?

Courts considering the control factor must make a "careful distinction . . . 'between authoritative direction and control, and mere suggestions as to details ....' " Energy XXI, GoM, LLC v. New Tech Eng'g, L.P., 787 F. Supp. 2d 590, 613 (S.D. Tex. 2011) (quoting Ruiz, 413 F.2d at 313 (quoting Standard Oil Co. v. Anderson, 212 U.S. 215, 222 (1909)). While in the

---

[3] In contrast, the control factor is "de-emphasized" for the LHWCA. Santacruz, 2015 WL 2340330, at *2 (citing Guidry, 614 F.2d at 455); Melancon v. Amoco Prod. Co., 834 F.2d 1238, 1245 n. 12 (5th Cir.1988)).

present case the details of where to place individual rock loads was directed by the excavator, Low Lands, authoritative direction and control over the job and the jobsite was exercised by Ponchartrain Partners.

Zealous assigned Captain Morgan to work at Ponchartrain Partners, and thereafter had no role in assigning him tasks or directing his work for Ponchartrain Partners. Rather, Captain Morgan reported to a Ponchartrain Partners' employee, Nick Dufrene, for his daily assignments, which were carried out by coordinating with the excavator, Low Land. While Zealous supervisor Art Leblanc would call Captain Morgan "every now and then" to "check in",[4] he did not provide any instructions on performance of the job. This limited, sporadic contact does not make Zealous the party with more control.

Ponchartrain Partners emphasizes that Captain Morgan stated that his employer was Zealous. However, it is not disputed that Zealous was his nominal employer. The issue is whether he was the borrowed servant of Ponchartrain Partners. Captain Morgan's testimony was unequivocal that Ponchartrain Partners owned the vessel and jobsite, oversaw the project, and had the power to discharge him from the job. These facts establish that Ponchartrain Partners, not Zealous, exercised control over Captain Morgan's work.

### 2. *Whose work was being performed?*

It is undisputed that Ponchartrain Partners' work was being performed. Captain Morgan was assisting with the Grand Isle Seawater Jetty project undertaken by Ponchartrain Partners.

---

[4] Depo. of Captain Kevin Marshall Morgan, 90:24-91:4.

### 3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

Captain Morgan was lent to Ponchartrain Partners pursuant to a service agreement specifying that Zealous, as service provider, would provide Captain Morgan's services as a boat captain for a period of time at a day rate of $550.00. All of the services provided under the agreement were to be administered and approved by a Ponchartrain Partners employee.[5]

### 4. Did the employee acquiesce in the new work situation?

The focus of this factor is whether the employee agreed to the work arrangement. Skipper v. A&M Dockside Repair, Inc., 829 F. App'x 1, 5 (5th Cir. 2020), cert. denied, 141 S. Ct. 2569 (2021). Captain Morgan testified that he considered his employer to be Zealous because they paid him, although he worked and lived at the Pontchartrain Partners' jobsite for three months. While Ponchartrain Partners suggests that this factor is "a wash", i.e. neutral, the fact that for three months Captain Morgan worked under the direction of Dufrene or other Ponchartrain Partners employees, indicates that Captain Morgan agreed to the new work arrangement which required reporting to Ponchartrain Partners.

### 5. Did the original employer terminate his relationship with the employee?

This factor does not require the lending employer to completely sever ties with its employee in order to determine that the employee is the borrowed servant of the new employer. Capps v. N.L. Baroid–NL Industries, Inc., 784 F.2d 615, 617 (5th Cir.1986). Instead, it focuses on the lending employer's relationship with the employee while the borrowing occurs. Id. at 618.

---

[5] Service Agreement, Rec. Doc. 45-4.

While Captain Morgan did not terminate his employment with Zealous, Captain Morgan testified that he had little communication with Zealous while working at the Ponchartrain Partners site. His Zealous supervisor, Art Leblanc, would check in occasionally, and he received his paycheck from Zealous. This limited contact with Zealous weighs in favor of finding that Captain Morgan was Ponchartrain Partners's borrowed employee.

### *6. Who furnished the tools and the place of performance?*

The vessel was owned by Ponchartrain Partners, and the work was completed on Ponchartrain Partners' jobsite. Ponchartrain Partners provided lodging for Captain Morgan in a shoreside condo. The only things Captain Morgan brought to the jobsite were his helmet, safety vest, steel-toed shoes, and lunch. Thus, this factor weighs in favor of finding that Captain Morgain was Ponchartrain Partners' borrowed employee.

### *7. Was the new employment over a considerable length of time?*

A lengthy term of employment generally supports a finding that an employee is a borrowed employee. Capps, 784 F.2d at 618. This factor carries more weight in the LHWCA context, where the borrowed employee inquiry "turns on the general employment relationship over a more sustained period of time." Santacruz, 2015 WL 2340330, at *2 (citing Melancon, 834 F.2d at 1245 n. 12. In the vicarious liability context, the focus is more on which employer controlled the employee at "the time when liability arises." Id. (citing Guidry, 614 F.2d at 455 and Standard Oil, 212 U.S. at 220 (focusing on "who was the master at the *very time* of the negligent act" (emphasis in Santacruz)).

However, as to what constitutes a considerable length, "scattershot findings abound."

8

Mays v. Dir., Off. of Workers' Comp. Programs, 938 F.3d 637, 646 (5th Cir. 2019). Under the right facts, a period of one day can be enough. Capps, 784 F.2d at 618. The Fifth Circuit has found a one-month period neutral, Brown v. Union Oil Co. of California, 984 F.2d 674, 679 (5th Cir. 1993), and a 90-day period neutral. Mays, 938 F.3d at 646. In another case, the Fifth Circuit noted that "it is debatable whether approximately a year and a half is a 'considerable' length of time." U.S. Fire Ins. Co. v. Miller, 381 F.3d 385, 390 (5th Cir. 2004)). At the other end of the spectrum, a seven-year term weighed in favor of borrowed servant status. Melancon v. Amoco Prod. Co., 834 F.2d 1238, 1246 (5th Cir.), amended on reh'g in part sub nom. Melancon v. Amoco Prods. Co., 841 F.2d 572 (5th Cir. 1988).

In this case, Captain Morgan worked for Ponchartrain Partners for three months. While it may be debatable whether that period is considerable, it is undisputed that Captain Morgan was under Ponchartrain Parnters' control at the very time of the accident. This factor weighs slightly in favor of finding that Captain Morgan was Ponchartrain Partners' borrowed employee.

### 8. Who had the right to discharge the employee?

The discharge factor is satisfied if the borrowing employer has the right to terminate the borrowed employee's services with the borrowing employer, even if the borrowing employer cannot terminate the borrowed employee's position with the nominal employer. Melancon, 834 F.2d at 1246. In this case, Captain Morgan testified that while Zealous had the right to terminate his employment with them, Ponchartrain Partners had the capacity to terminate his services at the jobsite. This factor indicates also that Captain Morgan was Ponchartrain Partners's borrowed employee.

*9. Who had the obligation to pay the employee?*

The service agreement provided that Ponchartrain Partners would pay Zealous $550 per day for Captain Morgan's service. Zealous CEO/President Kenneth Leblanc averred that Zealous paid Captain Morgan $450 per day from the funds received from Ponchartrain Partners. "When the funds used to pay the employee are received from the entity the employee is contracted out to, we have held that that entity, in effect, pays the employee." Skipper, 829 F. App'x at 6; see also, Melancon, 834 F.2d at 1246; Capps, 784 F.2d at 618. Thus, Ponchartrain Partners ultimately paid for Captain Morgan's services. This arrangement supports a finding of borrowed employee status. See Melancon, 834 F.2d at 1246.

Considering the foregoing analysis, the court finds that Zealous is entitled to summary judgment finding that Captain Morgan was the "borrowed employee" of Ponchartrain Partners at the time of plaintiff's accident, and Ponchartrain Partners is vicariously liable for any negligence of Captain Morgan. Accordingly,

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment on "Borrowed Employee" Defense** (Rec. Doc. 45) filed by defendant Z.E. Services, L.L.C. is **GRANTED**.

New Orleans, Louisiana, this __13th__ day of June, 2022.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**